IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2022 OCT 18 PM 4: 13

OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAULA R. CREPS,<br><br>Defendant. | 8:22CR229<br><br>INDICTMENT<br><br>18 U.S.C. § 1341<br>18 U.S.C. § 981(a)(1)(C)<br>28 U.S.C. § 2461(c)<br>21 U.S.C. § 853(p) |

The Grand Jury charges that

**INTRODUCTION AND BACKGROUND**

At all times material to this Indictment:

1.  Lift Up Sarpy County ("LUSC") was a non-profit 501(c) organization as described in the Internal Revenue Code, with its principal place of business in Bellevue, Nebraska. It received grants and charitable donations, and distributed them to government and other organizations operating in Sarpy County, Nebraska.

2.  At all relevant times, LUSC maintained business checking accounts ("LUSC Accounts") at a bank located in Nebraska ("Bank"). LUSC also maintained VISA credit card accounts at the Bank.

3.  Sarpy County Court Appointed Special Advocates ("CASA") was a program operated by Sarpy County, Nebraska. Its staff were Sarpy County employees. It sometimes obtained grants that could be used to pay for designated expenses. LUSC maintained custody of grant funds until they were expended.

4.  CASA staff trained and oversaw volunteers who were appointed by the Juvenile

Court to serve as special advocates ("CASA Advocates") on behalf of children who were involved in Juvenile Court proceedings. The children typically had been removed from their homes due to reports of abuse or neglect. CASA Advocates supported the children during the court process and prepared reports for the Juvenile Court concerning the children's best interests.

5. In addition to advocating for children in Juvenile Court, CASA staff and Advocates helped to meet other needs of such children and their families. CASA staff and Advocates helped children and their families obtain food and clothing, participate in sports and education activities, and enjoy special occasions such as birthdays or prom. To meet these needs, they ordinarily referred children and their families to resources within the community, but in some instances paid for items and activities using funds provided by LUSC.

6. LUSC provided a VISA credit card to CASA ("CASA Credit Card") to pay for items and activities needed by children and their families. To use the CASA Credit Card, CASA staff and Advocates were required to submit a credit card payment record form detailing the payment, and to attach the receipt. On a monthly basis, LUSC paid the balance of the CASA Credit Card using funds drawn from its LUSC Accounts at the Bank.

7. If the CASA Credit Card had an insufficient credit limit or was otherwise unavailable, CASA staff and Advocates could use their own funds to pay for items and activities needed by children and their families, then obtain reimbursement by check from LUSC. CASA staff who incurred expenses covered by grant funds could likewise obtain reimbursement by check from the grant funds kept by LUSC. Persons requesting reimbursement were required to submit a check request form detailing the payment, attach the receipt, and specify the address to which reimbursement should be mailed. Once approved, LUSC drafted reimbursement checks drawn from its LUSC Accounts at the Bank and mailed the checks through the United States

mail to the address designated on the completed form.

8. Defendant PAULA R. CREPS became the Executive Coordinator or Director ("Director") of CASA in November 2015, and held that position until July 2022. In her capacity as Director, CREPS managed the operation of CASA and oversaw its staff and volunteer Advocates. She reviewed and approved:

   a. the credit card payment record forms documenting use of the CASA Credit Card on behalf of children and their families;

   b. the check request forms for reimbursement of expenses incurred on behalf of children and their families; and

   c. the check request forms for reimbursement of expenses covered by grant funds.

9. CREPS was not authorized to use the CASA Credit Card for her own personal expenses, or to be reimbursed by LUSC for her own personal expenses.

## THE SCHEME TO DEFRAUD

10. Beginning at an unknown date, but at least as early as in or about March 2019, and continuing through in or about July 2022, CREPS devised and intended to devise a scheme to defraud LUSC, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises (the "Scheme").

11. It was part of the Scheme that CREPS used the CASA Credit Card to pay for personal expenses, such as registering or repairing vehicles belonging to Creps or a family member, obtaining tickets for concerts that CREPS or a family member attended, paying for utilities at CREPS's residence, or paying taxes owed by CREPS and her husband. CREPS completed payment record forms that falsely stated she had used the CASA Credit Card for the benefit of children and/or their families. In truth and fact, as CREPS well knew, she used the

3

CASA Credit Card for the benefit of herself and her family. CREPS also created fraudulent receipts and attached them to certain payment record forms.

12. It was further part of the Scheme that CREPS used the CASA Credit Card to purchase gift cards, then used the gift cards to pay for personal expenses, such as a luau and shuttle service in Hawaii. CREPS completed payment record forms that falsely stated she used the CASA Credit Card to obtain gift cards for the benefit of children and/or their families. In truth and fact, as CREPS well knew, she used the CASA Credit Card to obtain gift cards for the benefit of herself and her family.

13. It was further part of the Scheme that CREPS purportedly used her own funds to pay for goods and services for the benefit of children and/or their families, such as furniture, vehicle registration and repair, and utilities. CREPS also purportedly used her own funds to pay for advertising and other expenses covered by grant funds. CREPS completed check request forms that falsely stated she had expended her own funds for the benefit of children and/or their families, and for expenses covered by grants, and requested that reimbursement be mailed to her. In truth and fact, as CREPS well knew, the transactions did not occur. CREPS also created fraudulent receipts and attached them to the check request forms.

14. As a result of the Scheme, CREPS fraudulently obtained at least $44,884.95 in goods and services for the benefit of herself and her family that was paid for or reimbursed by LUSC.

## COUNTS I THROUGH V

15. Paragraphs 1-14 of this Indictment are incorporated herein.

16. On or about the dates set forth below, in the District of Nebraska and elsewhere, Defendant PAULA R. CREPS, for the purpose of executing the Scheme described above and

attempting to do so, knowingly caused to be delivered by mail, according to the direction thereon, the matter or thing described below for each count, each mail delivery constituting a separate count:

| Count | Date | Description |
| --- | --- | --- |
| I | July 26, 2019 | U.S. Mail containing a $827.76 check payable to CREPS |
| II | February 18, 2020 | U.S. Mail containing a $492.65 check payable to CREPS |
| III | September 29, 2020 | U.S. Mail containing a $2,482.26 check payable to CREPS |
| IV | October 26, 2021 | U.S. Mail containing a $788.75 check payable to CREPS |
| V | May 26, 2022 | U.S. Mail containing a $1,479.93 check payable to CREPS |

All in violation of Title 18, United States Code, Section 1341.

## CRIMINAL FORFEITURE ALLEGATIONS

1. The allegations contained in Counts I through V of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1341 set forth in Counts I through V of this Indictment, Defendant PAULA R. CREPS shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to:

    a. Money Judgment. Judgment against Defendant PAULA R. CREPS for a sum of money equal to the value of the property constituting, or derived from, any

proceeds Defendant PAULA R. CREPS obtained directly or indirectly as the result of the offenses set forth in Counts I through V of this Indictment.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

FOREPERSON

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

John E. Higgins